IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JPAY LLC, <br> A Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> SHALANDA HOUSTON, <br><br> Defendant. | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Plaintiff, JPay LLC ("JPay"), files this Complaint for Declaratory and Injunctive Relief against Shalanda Houston ("Defendant" or "Ms. Houston") and alleges:

**PARTIES**

1. Plaintiff JPay is a Delaware Limited Liability Company, with its principal place of business in Miramar, Florida. As discussed here, JPay is a citizen of Delaware and Texas. Specifically, JPay's sole member is Securus J Holdings, LLC, whose sole member is Securus Technologies, LLC, whose sole member is Aventiv Technologies, LLC, whose sole member is SCRS Acquisition Corporation, a Delaware Corporation with its principal place of business in Texas.

2. Defendant Shalanda Houston is a citizen of Georgia and resides in Brookhaven, Georgia.

## JURISDICTION AND VENUE

3. Personal jurisdiction and venue are proper in this Court pursuant to the most recent agreement between the parties, which provides that "[t]he parties hereby consent to jurisdiction and venue in the Federal District Courts in the Northern District of Texas . . . and waive any objections thereto." Exhibit 1 ¶ 16.[1]

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Complete diversity of citizenship exists, and the amount in controversy exceeds $75,000, exclusive of costs and interest. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because Ms. Houston seeks to certify a class of millions of putative class members whose cumulative damages exceed $5,000,000, exclusive of interests and costs, and because Ms. Houston is a citizen of a different state than JPay.

## FACTUAL ALLEGATIONS

**A.  Ms. Houston commenced a class arbitration against JPay**

5. Ms. Houston is a user of JPay's electronic money transfer services.

6. On October 16, 2015, Ms. Houston—along with another user, Cynthia Kobel—initiated a class arbitration before three arbitrators (the "Arbitrators") with the American Arbitration Association ("AAA") against JPay (the "Arbitration"). *See* Exhibit 2. The Arbitration stemmed from Ms. Houston's use of JPay's electronic money transfer services. *See id.*

7. Ms. Houston asserted arbitral jurisdiction based on her assent to JPay's then-existing terms of service (the "Original Agreement"). *See* Exhibit 2; Exhibit 3. Ms. Houston also

---

[1] The agreement at issue in this case is a Terms of Service that has been modified from time to time. Defendant has accepted these terms each time they have been modified. All relevant prior versions of the agreement indicated that Plaintiff may change the terms. Since August 2021, Defendant has, at least ten times, through her use of services and/or by expressly checking "I agree," agreed to a Texas forum and Texas law.

2

sought to represent an expansive class of "[a]ll natural persons who paid a fee to JPay for electronic money transfer services and who agreed to arbitrate their claims with Jpay [sic] (the 'Class')." Exhibit 2 ¶ 89.

8. The Original Agreement was silent on the issue of the availability of any class action or class arbitration mechanism. Therefore, under the Original Agreement, JPay's position was that it had only agreed to arbitrate individual claims and had not agreed to arbitrate on a classwide basis. Accordingly, JPay commenced a suit in Florida state court to obtain a declaration that classwide arbitration was not permitted under the Original Agreement. Ms. Houston removed that suit to the United States District Court for the Southern District of Florida (the "Florida Litigation").

9. In her notice of removal, Ms. Houston asserted federal court jurisdiction under 28 U.S.C. § 1332(d), arguing that (1) the case implicated a putative class consisting of over 100 class members; (2) diversity of citizenship under the Class Action Fairness Act existed; and (3) the amount in controversy "far exceeds" $5 million because "a determination of the amount in controversy involves a determination of the amount involved in the underlying substantial dispute to be arbitrated," which "involves an assessment of JPay's potential liability if the relief is not granted." *See JPay, Inc. v. Kobel et al.*, Case No. 1:16-cv-20121 (S.D. Fla.), ECF No. 1.

10. The Florida Litigation went on for some time and included an appeal to the Eleventh Circuit Court of Appeals. Eventually, in the Florida Litigation, the court held that the Arbitrators, and not a court, should determine whether, under the Original Agreement, JPay and Ms. Houston had agreed to arbitrate on a classwide basis.

11. On September 26, 2019, the Arbitrators issued a clause construction award, holding that the Original Agreement permitted class arbitration.

12.     In the Florida Litigation, JPay then moved to partially vacate the clause construction award. The court ultimately denied JPay's motion and closed the case. *See infra,* n.2.

**B.    JPay revised its terms of service to include an explicit class arbitration waiver and a clause requiring a court to address any challenges to that waiver**

13.     After Ms. Houston commenced the Arbitration in October 2015 and argued that the Original Agreement allowed class arbitrations, JPay revised its terms of service to, among other things, eliminate any perceived ambiguity as to whether a class arbitration or class action may be maintained. Specifically, on December 16, 2015, JPay revised its terms of service to include (i) an explicit class arbitration waiver ("Class Waiver"), and (ii) a clause specifically requiring that a court, and not an arbitrator, resolve any challenges to that class waiver ("Exclusive Court Jurisdiction Clause"). *See* Exhibit 4 ¶¶ 14(f)-(g).

14.     In this way, JPay made it clear (i) that the revised agreements did not permit class arbitration, and (ii) that arbitrators did not have jurisdiction to determine whether a class arbitration could proceed under the revised agreements.[2]

---

[2] Ms. Houston entered into the December 16, 2015 Agreement. JPay, therefore, argued in the Arbitration and Florida Litigation that the December 2015 Agreement superseded the Original Agreement and foreclosed Ms. Houston's class arbitration. In their clause construction award, the Arbitrators held that the revised terms of service did not retroactively apply to Ms. Houston in the Arbitration, given that she had already commenced her case prior to entering into the revised agreement. In the Florida Litigation, the court declined to vacate that arbitral holding under the deferential standard that applies to review of arbitral awards. As set forth, *infra*, there is now an open issue as to the other customers nationwide who agreed to versions of the terms of service with a class waiver and an exclusive court jurisdiction clause for challenging the class waiver. Unlike Ms. Houston, none of those putative class members commenced or intervened in any class arbitration prior to entering into terms of service with a class waiver. And millions of them never agreed to the arbitration clause Ms. Houston commenced her suit under, and instead **have only ever agreed** to the terms of service that included both **an express class arbitration waiver** and an express reservation **that only a court** may decide this issue.

15.     From that time to the present, JPay intermittently amended its terms of service. And each terms of service from December 16, 2015 to the present has included both a Class Waiver and an Exclusive Court Jurisdiction Clause.

16.     As a result, millions of JPay customers who only used JPay's services on or after December 16, 2015, have only agreed to an arbitration provision that contains both a Class Waiver and an Exclusive Court Jurisdiction Clause. In other words, all customers who only used JPay's services on or after December 16, 2015, agreed that their claims could not be adjudicated in a class action or class arbitration and further agreed that only a court, not the arbitrators, can determine the validity or enforceability of the Class Waiver.

1. *Time Period 1: December 16, 2015 – August 18, 2021*

17.     Between December 16, 2015, and August 18, 2021, JPay updated its terms of service eleven times. *See* Exhibits 4-14 (collectively, the "Earlier Agreements").

18.     Each Earlier Agreement contained an explicit Class Waiver and an Exclusive Court Jurisdiction Clause.

19.     Specifically, the Earlier Agreements each contain the following Class Waiver:

> ALL DISPUTES, REGARDLESS OF THE DATE OF ACCRUAL OF SUCH DISPUTE, SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. YOU ARE WAIVING YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. YOU AND JPAY AGREE THAT THE ARBITRATORS HAVE NO AUTHORITY TO ORDER CONSOLIDATION OR CLASS ARBITRATION OR TO CONDUCT CLASS-WIDE ARBITRATION PROCEEDINGS, AND ARE ONLY AUTHORIZED TO RESOLVE THE INDIVIDUAL DISPUTES BETWEEN YOU AND JPAY ALONE. FURTHER, YOU WILL NOT HAVE THE RIGHT TO . . . HAVE ANY DISPUTE ARBITRATED ON A CLASS ACTION BASIS, OR TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION.

*See* Exhibit 4 ¶ 14(f); Exhibit 5 ¶ 14(f); Exhibit 6 ¶ 14(f); Exhibit 7 ¶ 15(f) (substantially similar clause); Exhibit 8 ¶ 15(f) (substantially similar clause); Exhibit 9 ¶ 15(f) (substantially similar clause); Exhibit 10 ¶ 15(f) (substantially similar clause); Exhibit 11 ¶ 15(f) (substantially similar clause); Exhibit 12 ¶ 15(f) (substantially similar clause); Exhibit 13 ¶ 15(f) (substantially similar clause); Exhibit 14 ¶ 15(f) (substantially similar clause).

20. Each Earlier Agreement also contained an Exclusive Court Jurisdiction Clause, dictating that only a court, and not the arbitrators, can adjudicate challenges to the Class Waiver. The Exclusive Court Jurisdiction Clause provides:

> THE VALIDITY, EFFECT, AND ENFORCEABILITY OF THE FOREGOING WAIVER OF CLASS ACTION LAWSUIT AND CLASS-WIDE ARBITRATION, IF CHALLENGED, ARE TO BE DETERMINED SOLEY AND EXCLUSIVELY BY FEDERAL DISTRICT COURT LOCATED IN THE SOUTHERN DISTRICT OF FLORIDA OR FLORIDA STATE COURT IN MIAMI-DADE COUNTY AND NOT BY JAMS OR ANY ARBITRATOR.

*See* Exhibit 4 ¶ 14(g); Exhibit 5 ¶ 14(g); Exhibit 6 ¶ 14(g); Exhibit 7 ¶ 15(g) (substantially similar clause); Exhibit 8 ¶ 15(g) (substantially similar clause); Exhibit 9 ¶ 15(g) (substantially similar clause); Exhibit 10 ¶ 15(g) (substantially similar clause); Exhibit 11 ¶ 15(g) (substantially similar clause); Exhibit 12 ¶ 15(g) (substantially similar clause); Exhibit 13 ¶ 15(g) (substantially similar clause); Exhibit 14 ¶ 15(g) (substantially similar clause).

21. Additionally, the Earlier Agreements clearly provide that should a court invalidate the Class Waiver, then the arbitration agreement doesn't apply, and any further proceeding must move forward in court:

> WITHOUT WAIVING THE RIGHT TO APPEAL SUCH DECISION, SHOULD ANY PORTION OF SECTION 14(F) BE STRICKEN FROM THIS AGREEMENT OR DEEMED OTHERWISE INVALID OR UNENFORCEABLE, THEN THIS ENTIRE SECTION 14 (OTHER THAN THIS SENTENCE) SHALL BE STRICKEN FROM THIS AGREEMENT AND INAPPLICABLE, AND ANY AND ALL DISPUTES SHALL PROCEED IN FEDERAL DISTRICT COURT LOCATED IN THE SOUTHERN DISTRICT OF

> FLORIDA OR FLORIDA STATE COURT IN MIAMI-DADE COUNTY AND BE DECIDED BY A JUDGE, SITTING WITHOUT A JURY, ACCORDING TO APPLICABLE COURT RULES AND PROCEDURES, AND NOT AS A CLASS ACTION LAWSUIT.

*See* Exhibit 4 ¶ 14(h); Exhibit 5 ¶ 14(h); Exhibit 6 ¶ 14(h); Exhibit 7 ¶ 15(h) (substantially similar clause); Exhibit 8 ¶ 15(h) (substantially similar clause); Exhibit 9 ¶ 15(h) (substantially similar clause); Exhibit 10 ¶ 15(h) (substantially similar clause); Exhibit 11 ¶ 15(h) (substantially similar clause); Exhibit 12 ¶ 15(h) (substantially similar clause); Exhibit 13 ¶ 15(h) (substantially similar clause); Exhibit 14 ¶ 15(h) (substantially similar clause).

22. The Earlier Agreements therefore make clear that parties to the Earlier Agreements cannot proceed with class arbitration under any circumstances. Either the Class Waiver is enforceable, or if it's not, any further action must proceed in court.

2. *Time Period 2: August 18, 2021 – Present*

23. After the Earlier Agreements, JPay updated its terms of service on three occasions. Each of these updated terms contained both a Class Waiver and an Exclusive Court Jurisdiction Clause.

24. Specifically, on August 18, 2021, JPay (now the wholly owned subsidiary of a Texas company) updated its terms of service to choose Texas to both supply the governing law of the agreement and act as the exclusive forum for adjudicating disputes not subject to arbitration. Exhibit 15 ¶¶ 14-15 (the "August 18 Agreement"). JPay revised its terms of service again on May 23, 2022 and July 15, 2022, but did not substantively alter the Class Waiver or the Exclusive Court Jurisdiction Clause. *See* Exhibit 16; Exhibit 1 (collectively with the August 18 Agreement, the "Later Agreements").

25. Specifically, the Later Agreements, like the Earlier Agreements, contain the following explicit Class Waiver:

> Waiver of Right to Bring Class Action and Representative Claims. SUBJECT TO THE SMALL CLAIMS COURT EXCEPTION ABOVE, AND CERTAIN EXCEPTIONS LISTED BELOW, ALL DISPUTES, PAST, PRESENT, AND FUTURE, AND REGARDLESS OF THE DATE OF ACCRUAL OF SUCH DISPUTE, SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. The arbitrator is empowered to resolve the Dispute with the same remedies available in court; however, any relief must be individualized and shall not affect any other customer. JPay and you also agree that each may bring claims against the other only in our respective individual capacities (whether in arbitration or court) and in so doing JPay and you hereby waive the right to a trial by jury, to assert or participate in any class action lawsuit or class action arbitration, any private attorney general lawsuit or private attorney general arbitration, and any joint or consolidated lawsuit or joint or consolidated arbitration of any kind.

*See* Exhibit 1 ¶ 16; Exhibit 15 ¶ 15; Exhibit 16 ¶ 15.

26.     The Later Agreements, like the Earlier Agreements, also clearly set forth that only a court can adjudicate challenges to the Class Waiver. The Exclusive Court Jurisdiction Clause provides:

> Arbitrability of Certain Disputes. Except as specifically set forth in this section, only the arbitrator is authorized to make determinations as to the scope, validity, or enforceability of this Customer Agreement and this Arbitration Agreement, including whether any Dispute falls within its scope. **Notwithstanding the above, the scope, validity, effect, and enforceability of this agreement's waiver of (i) class action lawsuits, (ii) representative or class-wide arbitration . . . are to be determined solely and exclusively by the Federal District Court located in the Northern District of Texas or a Texas state court in Denton County or Collin County and not by Resolute, the AAA, or any arbitrator.** If a lawsuit is filed to enforce these waivers the parties agree that the arbitration shall be immediately stayed, by agreement or court order, until the court case is resolved and all appellate review is exhausted. The cost of proceedings under this section, including, without limitation, each party's attorneys' fees and costs, shall be borne by the unsuccessful party. The parties hereby consent to jurisdiction and venue of the Federal District Courts in the Northern District of Texas or Texas state court in Denton County or Collin County and waive any objections thereto.

*See* Exhibit 1 ¶ 16; Exhibit 15 ¶ 15; Exhibit 16 ¶ 15 (emphasis added).

27.     Additionally, the Later Agreements, again like the Earlier Agreements, provide that should a court invalidate the Class Waiver, then the arbitration agreement doesn't apply, and any further proceeding must move forward in court:

>Severability. If a court decides that the waivers or limitations of the Waiver of Right to Bring Class Action and Representative Claims section, above, are invalid or unenforceable, any putative class . . . action must be brought in a court of proper jurisdiction and not in arbitration . . . Without waiving the right to appeal a court decision triggering this section, should a claim be required to proceed in court under this section, any and all disputes shall proceed in a Federal District court located in the Northern District of Texas or Texas state court in Denton County or Collin County and be decided by a judge, sitting without a jury and not as a class action lawsuit. The parties hereby consent to jurisdiction and venue of the Federal District Courts in the Northern District of Texas or Texas state court in Denton County or Collin County and waive any objections thereto.

*See* Exhibit 1 ¶ 16; Exhibit 15 ¶ 15; Exhibit 16 ¶ 15.

28. The Later Agreements, like the Earlier Agreements, therefore, make clear that parties cannot proceed with class arbitration under any circumstances. Either the Class Waiver is enforceable, or if it's not, any further action must proceed in court.

\*   \*   \*

29. In sum, the Later and Earlier Agreements are substantially similar in relevant parts. They both provide that the parties cannot pursue class arbitration, that any challenge to the class arbitration must be adjudicated by a court, that arbitrators are without power to adjudicate the Class Waiver, and that if the Class Waiver is struck by a court, litigation must proceed in court.

30. The main difference between the Later and Earlier Agreements is the choice of law and venue clauses switching from Florida to Texas.

C. **Ms. Houston continues transacting with JPay and, like millions of absent putative class members, accepts the Earlier and Later Agreements that foreclose class arbitrations**

31. Ms. Houston, after filing a demand for arbitration on October 16, 2015, has continued to use JPay's electronic money transfer services and has continued to accept JPay's updated terms of service.

32. Specifically, Ms. Houston accepted the Earlier Agreements and Later Agreements over 30 times between 2016 and the present.[3]

33. To be clear, so did millions of putative class members.

D. **Ms. Houston improperly asks the Arbitrators, and not a court, to invalidate the Earlier and Later Agreements' Class Waiver as to millions of JPay's customers in the United States and JPay preserves its rights**

34. As stated above, Ms. Houston seeks to arbitrate on behalf of a class of "[a]ll natural persons who paid a fee to JPay for electronic money transfer services and who agreed to arbitrate their claims with Jpay [sic] (the 'Class')" ("Putative Class"). Exhibit 2 ¶ 89.

35. To be clear, JPay is not challenging Ms. Houston's right to proceed with a putative class arbitration in some respect. The Arbitrators have already ruled that Ms. Houston can proceed with class arbitration with respect to transactions made prior to the Earlier and Later Agreements. JPay does not challenge that ruling here.

36. But, on January 6, 2023, Ms. Houston asked the Arbitrators to invalidate the Class Waiver of the Earlier and Later Agreements as to all Putative Class members who entered into those contracts. This request sought to include millions of JPay customers in the Putative Class Ms. Houston represents—in direct violation of the Earlier and Later Agreements these customers and Ms. Houston agreed to.

37. Ms. Houston asked the Arbitrators to invalidate the Class Waiver so that she could expand the Putative Class to include class members who accepted the Earlier and Later Agreements.

---

[3] Ms. Houston did not affirmatively accept four of the Earlier Agreements dated: December 16, 2015, December 5, 2017, June 26, 2018, and October 8, 2018.

38. In response, on January 20, 2023, JPay wrote a letter to the Arbitrators informing them that "this Panel lacks jurisdiction to consider, let alone grant" Ms. Houston's requested relief because the terms of service provide that "only a court, and not the Panel, can adjudicate the issue."

39. In conjunction with the letter, JPay also filed a lawsuit in the Northern District of Texas. *See JPay LLC v. Houston*, Case No. 3:23-cv-00165, ECF No. 1 (the "Texas Lawsuit").

40. In the Texas Lawsuit, JPay asked the court to declare that the Arbitrators are without power to adjudicate the Later Agreements' Class Waiver and also sought to enjoin Ms. Houston from challenging the Later Agreements' Class Waiver in Arbitration. *Id.* ¶¶ 26-49.

41. In response to the Texas Lawsuit, the Arbitrators stayed the Arbitration vis-à-vis Time Periods 1 and 2.

E. **Ms. Houston engages in procedural gamesmanship**

42. Given the Earlier and Later Agreements have substantially identical Exclusive Court Jurisdiction Clauses, JPay attempted to simplify issues, conserve judicial resources, and expedite resolution by narrowly tailoring the Texas Action to seek a declaration on the Later Agreements (*Compare supra* ¶ 20 *with* ¶ 26). JPay assumed the court's interpretation of the Later Agreements would apply to the nearly identical language in the Earlier Agreements and that the AAA would respect that order for both Time Periods.

43. Seven months later, however, Ms. Houston filed a letter with the Arbitrators where she attempted to circumvent the Texas Lawsuit.

44. In this letter, Ms. Houston stated she was no longer seeking discovery or class certification for Time Period 2. She therefore argued that the Texas Lawsuit was moot, and the Arbitration could proceed as to Time Period 1. In so doing, Ms. Houston failed to mention that the Exclusive Court Jurisdiction Clause in the Earlier and Later Agreements are substantially identical:

11

Both Agreements unambiguously provide that any challenges to the class arbitration waiver **<u>cannot</u>** be heard by the Arbitrators. *Compare supra* ¶ 20 *with* ¶ 26.

45. Given Ms. Houston's representation and omission, on August 8, 2023, the Arbitrators ordered JPay to brief the enforceability of the Class Waiver for Time Period 1, *i.e.,* the one in the Earlier Agreements.

46. JPay has a clear and express right to have a court decide this issue, and thus cannot brief the issue before the Arbitrators without filing here, or it risks submitting the issue to the Arbitrators, contrary to its rights and the parties' agreement under the Earlier Agreements. *See OMG, L.P. v. Heritage Auction, Inc.*, 612 F. App'x 207, 212 (5th Cir. 2015) ("OMG simply cannot wait until it receives a decision with which it disagrees before challenging the arbitrator's authority.") (citing *Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union*, 706 F.2d 173, 175 (7th Cir. 1985) ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it.")).

47. The only remedy available to JPay, therefore, is to file this lawsuit and preserve its rights.

**F.**     **<u>Ms. Houston and the Arbitrators improperly seek to adjudicate the challenges to the Earlier Agreements' Class Waiver</u>**

48. As discussed above, Ms. Houston has asked the Arbitrators to invalidate Earlier Agreements' Class Waiver for all Putative Class members who entered into those contracts ("Class Waiver Putative Class Members"). This request seeks to include millions of JPay customers in the Putative Class Ms. Houston represents—in direct violation of the Earlier Agreements these customers and Ms. Houston agreed to.

49. The Class Waiver Putative Class Members can be divided into two groups:

12

    a. those who transacted with JPay only after a class arbitration waiver was in place and not before a class arbitration waiver was in place ("Post-Waiver Putative Class Members"); and

    b. those who transacted both before and after a class arbitration waiver was in place ("Pre-Waiver Putative Class members").

50. Ms. Houston seeks for the Arbitrators to invalidate the Class Waivers as to millions of Post-Waiver and Pre-Waiver Putative Class Members—even though each of those groups of people both (i) specifically contracted for a court to make that determination, and (ii) agreed that an arbitrator may not make that determination. *See supra* ¶ 20. In other words, Ms. Houston's request contravenes the Earlier Agreements (as well as the Later Agreements).

51. Because of that dispositive infirmity, moreover, any ruling by the Arbitrators as to the Class Waiver's enforceability could **not** have the binding, preclusive effect the parties seek. If, for example, the Arbitrators hold that the Class Waiver is enforceable, any Class Waiver Putative Class Member could initiate a lawsuit against JPay in court and argue that, by clear and express terms of the contract they signed, they are not bound by an arbitral ruling from an Arbitration they did not agree to participate in.

52. Thus, Ms. Houston's attempt for the Arbitrators to decide the scope, validity, effect, and/or enforceability of the Class Waiver is improper. The operative contracts—*i.e.*, the putative source of the Arbitrators' authority to bind JPay and any Putative Class Member—deprive the Arbitrators of jurisdiction over this specific issue. Pursuant to the Earlier Agreements, therefore, JPay now requests the Court declare the Arbitrators are without authority to decide the issue Ms. Houston asks them to adjudicate, as set forth below.

## COUNT I – DECLARATORY JUDGMENT
### (As to Post-Waiver Putative Class Members)

53. JPay adopts and reincorporates the allegations in paragraphs 1 through 52 as set forth herein.

54. This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

55. An actual and justiciable controversy exists between JPay and Ms. Houston as to whether the Arbitrators have jurisdiction to determine the scope, validity, effect, and/or enforceability of the Earlier Agreements' Class Waiver as to Post-Waiver Putative Class Members whom Ms. Houston seeks to include in her putative class.

56. Pursuant to the express and clear terms of the Earlier Agreements' Exclusive Court Jurisdiction Clause, a court, not the Arbitrators, must determine the scope, validity, effect, and/or enforceability of the Earlier Agreements' Class Waiver as to the Post-Waiver Putative Class Members whom Ms. Houston seeks to include in her putative class.

57. Despite that clear requirement, Ms. Houston seeks to have the Arbitrators determine the scope, validity, effect, and/or enforceability of the Earlier Agreements' Class Waiver and to, therefore, have the Arbitrators improperly adjudicate the rights of millions of JPay customers who have expressly agreed that such a decision will only be made by a court.

58. JPay, therefore, is entitled to a declaration that the Arbitrators are without power to determine the scope, validity, effect, and/or enforceability of the Earlier Agreements' Class Waiver as to Post-Waiver Putative Class Members.

## COUNT II – DECLARATORY JUDGMENT
### (As to Pre-Waiver Putative Class Members)

59. JPay adopts and reincorporates the allegations in paragraphs 1 through 52 as set forth herein.

14

60. This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

61. An actual and justiciable controversy exists between JPay and Ms. Houston as to whether the Arbitrators have jurisdiction to determine the scope, validity, effect, and/or enforceability of the Earlier Agreements' Class Waiver as to Pre-Waiver Putative Class Members whom Ms. Houston seeks to include in her putative class.

62. Pursuant to the express and clear terms of the Earlier Agreements' Exclusive Court Jurisdiction Clause, a court, not the Arbitrators, must determine the scope, validity, effect, and/or enforceability of the Earlier Agreements' Class Waiver as to the Pre-Waiver Putative Class Members whom Ms. Houston seeks to include in her putative class.

63. Despite that clear requirement, Ms. Houston seeks to have the Arbitrators determine the scope, validity, effect, and/or enforceability of the Earlier Agreements' Class Waiver and to, therefore, have the Arbitrators improperly adjudicate the rights of millions of JPay customers who have expressly agreed that such a decision will only be made by a court.

64. JPay, therefore, is entitled to a declaration that the Arbitrators are without power to determine the scope, validity, effect, and/or enforceability of the Earlier Agreements' Class Waiver as to Pre-Waiver Putative Class Members.

## **REQUESTED RELIEF**

65. If Ms. Houston is allowed to make an arbitral challenge to the Earlier Agreements' Class Waiver as to Putative Class Members, JPay will be irreparably harmed because it will be forced to arbitrate an issue it never agreed to arbitrate, and such a challenge will deprive JPay of its right to select the forum in which it wishes to resolve disputes. Moreover, JPay is likely to succeed on the merits because the Earlier Agreements' Exclusive Court Jurisdiction Clause unambiguously provides that the Arbitrators are without power to adjudicate challenges to the

Class Waiver. Additionally, the injury threatened to JPay (being forced to arbitrate issues it did not agree to arbitrate) outweighs any harm to Ms. Houston, who contracted to submit the dispute to a court. And finally, there is a strong public policy favoring the enforcement of contracts according to their terms, as JPay has requested.

66. **WHEREFORE**, JPay respectfully requests that this Court:

   a. Declare that the Arbitrators do not have the power to determine the enforceability of the Earlier Agreements' Class Waiver as to Post-Waiver Putative Class Members;

   b. Enjoin Ms. Houston from challenging the Earlier Agreements' Class Waiver in Arbitration as to Post-Waiver Putative Class Members;

   c. Declare that the Arbitrators do not have the power to determine the enforceability of the Earlier Agreements' Class Waiver as to Pre-Waiver Putative Class Members;

   d. Enjoin Ms. Houston from challenging the Earlier Agreements' Class Waiver in Arbitration as to Pre-Waiver Putative Class Members;

   e. Award JPay attorneys' fees and costs pursuant to the Earlier and Later Agreements;

   f. Award JPay other and further relief as may be proper.

Dated: August 22, 2023                             Respectfully Submitted,

*/s/ Christopher J. Schwegmann*
Velvel (Devin) Freedman
(*Pro Hac Vice Forthcoming*)
Florida Bar No. 99762
Colleen L. Smeryage
(*Pro Hac Vice Forthcoming*)
Florida Bar No.100023
**FREEDMAN NORMAND FRIEDLAND LLP**
1 S.E. 3rd Avenue, Suite 1240
Miami, Florida 33131
Tel.: (305) 971-5943
Email: vel@fnf.law

Email: csmeryage@fnf.law

Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: 214-981-3800
Facsimile: 214-981-3839

*Counsel for Plaintiff JPay LLC*