# EXHIBIT 11

Payments Terms of Service

Last revision date: July 1, 2019

As a condition to using JPay's payment services as described herein, you agree to these Payments Terms of Service ("Agreement") and any future amendments.

1.   NOTICE AND CONSENT. By using JPay's services, you agree to the terms and conditions of this Agreement, the JPay Privacy Policy, and any other documents incorporated by reference. You further agree that this Agreement forms a legally binding contract between you and JPay, and that this Agreement constitutes a writing signed by you under any applicable law or regulation.  JPay may amend this Agreement at any time.  You agree to be bound by the modified terms and conditions of this Agreement upon your use of JPay's services after the effective date of such changes. We last modified this Agreement on July 1, 2019.  Nothing in this Agreement shall be deemed to confer any third party rights or benefits.  Any rights not expressly granted herein are reserved by JPay.  In this Agreement, "You," "User," or "Customer" means any person or entity using the JPay Service (as defined below).

2.   THE JPAY SERVICE. A User may send money (the "Payment") to an inmate's trust account (or to any sub-accounts under the trust account) at a JPay-affiliated correctional facility (the "Facility"), to an inmate's prepaid media account (with funds in such media account hereinafter referred to as "JPay Credits") or to an inmate's prepaid debit/phone account. If you are unsure of which inmate's account to send a Payment or which JPay Service channels are available to you, please contact JPay or the Facility.  JPay will not be liable for a Payment sent to the incorrect inmate account. The Facility has the authority to review, withhold or reject a Payment.  You may make Payments through the following channels: (1) over the Internet or telephone using a Visa, MasterCard or Discover branded credit card or debit card (collectively "Bank Card"), (2) at a partner location using cash (i.e., MoneyGram), (3) at a JPay kiosk located at the Facility using cash or a Bank Card, or (4) by sending a money order to JPay's lockbox

(collectively, the "JPay Service").  Not all channels may be accepted at a specific Facility location. Please refer to the "FUNDS AVAILABILITY" section below for details regarding when the Payment will be available in the inmate's account.

3.   PAYMENT INFORMATION. To facilitate Payments, you will be required to provide JPay with certain information to allow us, among other things: to verify your identity; to receive appropriate Bank Card authorization, if applicable; and to gather any other information the Facility requires of you to send the Payment. Please refer to JPay's Privacy Policy regarding JPay's use of this information. When required by applicable law, Payments will be reported to federal, state or local authorities.

4.   IDENTITY AUTHENTICATION. You authorize JPay, directly or through third parties, to make any inquiries we consider necessary to validate your identity. This may include asking you for further information, requiring you to provide your date of birth, and/or other information that will allow us to reasonably identify you. We may also require you to take steps to confirm ownership of your email address, or verifying your Information against third party databases or through other sources. We may also ask to see your driver's license or other identifying documents. JPay reserves the right to close, suspend, or limit access to your account and/or the JPay Service in the event we are unable to obtain or verify this Information.

5.   FEES. Other than for sending money orders, which is a free Payment option, you agree to pay JPay a fee for using the JPay Service, at the rate in effect at the time you make a Payment (the "Service Fee"). All Service Fees are non-refundable. Service Fees may vary by state and the Facility in which the inmate resides and are available in the "Availability and Pricing" section of our website at jpay.com/pavail.aspx.  JPay is not responsible for any deductions made by the Facility (for reasons such as restitution, child support, etc.) prior to the crediting of your Payment to the inmate's account.

6.  FUNDS AVAILIBILITY. JPay generally transmits Payments within one (1) to two (2) business days, with the exception of lockbox money order Payments, which are generally processed within ten (10) business days of receipt of the money order by JPay. While JPay will process Payments within these time frames, the Facility may take additional time in posting those Payments to the inmate's account, and JPay has no control over, and is not responsible for any delay caused by, the Facility's processes and procedures.

7.  MONEY ORDERS. Where the lockbox money order Payment method is available to you, JPay will only accept money orders valued at $999.99 or less (and in some states, the maximum amount may be less).  You may refer to the JPay website for money order limits applicable in the state in which the recipient resides.  Any money orders over $999.99 (or the maximum amount permitted in the relevant state) will be returned to you.

In the event you initiate a stop payment on either money orders or personal checks, you will be responsible for reimbursing JPay for any bank fees or insufficient fund charges incurred by JPay as a result of the stop payment.

All money orders must be made payable to "JPay Inc." A deposit slip and any accompanying information required by the Facility must be filled out and submitted with every money order. Deposit slips may be found on JPay's website. All deposit slips must be legible and completely filled out. Any materials sent with the money order other than the deposit slip will be discarded.

JPay is not responsible for money orders lost in the mail or otherwise lost in transit, or for money orders that are sent to the provided address which did not reach the intended recipient. If JPay receives a money order and is not able to process the transaction due to the illegibility of the money order form, or restrictions imposed by the Facility, JPay will mail the money order and deposit slip back to the Customer's address provided on the deposit slip.

8.  JPAY CREDITS. Depending on the Facility, JPay Credits may be used by the inmate to purchase certain communication and media-related products (such as stamps for email and

VideoGram's, music, eBooks, games, news and videos, if such products are available at the inmate's Facility). JPay Credits are non-transferrable and unused JPay Credits will not be refunded. JPay may take appropriate action, including the removal of JPay Credits from inmate prepaid media accounts, where such funds were deposited through what JPay has determined to be unauthorized use of a credit or debit card.

9. PAYMENT. You are required to pay the Service Fees (along with the principal Payment amount) before JPay processes the Payment. By making a Payment with a Bank Card, you authorize JPay to process the Payment. When using a Bank Card, if JPay does not receive authorization from the card issuer, the Payment will not be processed and a hold may be placed on your Bank Card which can only be removed by the issuing bank. Each time you use the JPay Service, you agree that JPay is authorized to charge your designated Bank Card account for the principal Payment amount, the Service Fee and any other applicable fees. In the event that your transaction is reported as unauthorized and results in a chargeback, your account, as well as that of the inmate who received the unauthorized funds, will be blocked from future Bank Card transactions until JPay is reimbursed or the issue is otherwise resolved.

10. OTHER CHARGES. JPay is not responsible for any fees or charges that may be imposed by the financial institution associated with your Payment. For example, some credit card issuers may treat the use of your credit card to purchase the Service as a "cash advance" rather than a purchase transaction, and may impose additional fees and interest rates for the transaction. JPay is not responsible for any non-sufficient funds charges, chargeback fees or other similar charges that might be imposed on you by your bank, credit card issuer or other provider.

11. RECURRING PAYMENT. A recurring payment is a Payment in which you authorize JPay to charge your Bank Card on a regular or periodic basis ("Recurring Payment"). This authorization is to remain in full force and effect until you cancel a Recurring Payment. You may cancel a Recurring Payment at any time up to ten (10) business days prior to the date the Payment is scheduled to be processed. To cancel a Recurring Payment, log into your account, access the "Send Money" tab, then access the "Recurring Payments" link and click "Delete."

12. REFUNDS. You may not cancel a Payment once it has been processed. Under some circumstances, a Payment may not be completed or the Facility may refuse to accept a Payment. In such cases, JPay will cancel the Payment transaction and refund the principal Payment amount less the Service Fee to the Customer, unless the Payment was processed incorrectly due to JPay's error, in which case, JPay will also refund the Service Fee. Any disputes or refund requests relating to lost or misdirected payments must be submitted to JPay within sixty (60) days of the original transaction.

13. ESCHEATMENT LAWS. If, for whatever reason, JPay is unable to transfer your money order deposit to the Facility, JPay will attempt to contact you to issue you a refund or mail back to you your money order or payment instrument. If JPay is not able to contact you and you do not claim this Payment within the statutory time period, JPay may be required to escheat the Payment to the state of your residence. JPay will determine your state of residency based on the information provided by you at the time of Payment. If you do not claim the money order Payment within one (1) month after the date you made the Payment, where permitted by law, JPay may hold the Payment in an account and impose a monthly service fee on any unclaimed property, until such time the funds are required to be escheated to the state. Should JPay elect to impose a monthly service fee on any unclaimed property, JPay will ensure that it complies with all applicable laws and regulations in the applicable jurisdictions.

14. GOVERNING LAW. This Agreement and the rights of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Florida, exclusive of conflict or choice of law rules.

15. DISPUTE RESOLUTION.

THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS.

About Arbitration:

In the event JPay is unable to resolve a complaint you may have to your satisfaction (or if JPay has not been able to resolve a dispute it has with you after attempting to do so), we each agree to resolve those disputes through binding arbitration instead of in court. Arbitration is more informal than a lawsuit in court. Arbitration uses neutral arbitrators instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Any arbitration under this Agreement will take place on an individual basis; class arbitrations and in court class actions are not permitted.

Arbitration Agreement:

(a)  Any dispute, claim or controversy among the parties arising out of or relating to this Agreement ("Dispute") shall be finally resolved by and through binding arbitration administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules (the "JAMS Rules"), provided that failure to adhere to any of the time limits set forth therein shall not be a basis for challenging the award.

You may obtain copies of the current rules and forms and instructions for initiating arbitration by contacting JAMS as follows:

JAMS, The Resolution Experts
600 Brickell Avenue
Suite 2600
Miami, FL 33131
Web site: www.jamsadr.com
Telephone: (949) 224-1810 or (800) 352-5267

You agree that, by entering into this Agreement, you and JPay are each waiving the right to a trial by jury or to participate in a class action or class arbitration. Both the foregoing agreement of the parties to arbitrate any and all Disputes, and the results, determinations, findings, judgments and/or awards rendered through any such arbitration, shall be final and binding on the parties and may be specifically enforced by legal proceedings in any court of competent jurisdiction.

(b) The arbitration shall be conducted by three (3) arbitrators (unless the parties mutually agree to less). Each party shall select one arbitrator within 30 days of commencement of the arbitration, failing which, upon request of any party, JAMS shall appoint such arbitrator. The third arbitrator, who shall serve as Chairperson of the arbitral panel, shall be appointed by JAMS pursuant to Rule 15 of the JAMS Rules. The arbitrators must apply the terms of this arbitration agreement, including without limitation, the waiver of class-wide arbitration set forth below.

(c) The place of arbitration shall be Miami, Florida.

(d) The cost of the arbitration proceeding, including, without limitation, each party's attorneys' fees and costs, shall be borne by the unsuccessful party or, at the discretion of the arbitrators, may be prorated between the parties in such proportion as the arbitrators determine to be equitable and shall be awarded as part of the award.

(e) The arbitration provisions set forth herein, and any arbitration conducted thereunder, shall be governed exclusively by the Federal Arbitration Act, Title 9 United States Code, to the exclusion of any state or municipal law of arbitration.

(f)  RESTRICTIONS ON ARBITRATION: ALL DISPUTES, REGARDLESS OF THE DATE OF ACCRUAL OF SUCH DISPUTE, SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. YOU ARE WAIVING YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. YOU ARE WAIVING, AND WILL NOT HAVE, THE RIGHT TO CONSOLIDATION OR JOINDER OF INDIVIDUAL DISPUTES OR ARBITRATIONS, TO HAVE ANY DISPUTE ARBITRATED ON A CLASS ACTION BASIS, OR TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS PERTAINING TO ANY CLAIM

SUBJECT TO ARBITRATION. FURTHER, YOU AND JPAY AGREE THAT THE ARBITRATORS HAVE NO AUTHORITY TO ORDER CONSOLIDATION OR CLASS ARBITRATION OR TO CONDUCT ANY FORM OF REPRESENTATIVE OR CLASS-WIDE ARBITRATION PROCEEDINGS, AND ARE ONLY AUTHORIZED TO RESOLVE THE INDIVIDUAL DISPUTES BETWEEN YOU AND JPAY ALONE.

(g) THE SCOPE, VALIDITY, EFFECT, AND ENFORCEABILITY OF THE FOREGOING WAIVER OF CLASS ACTION LAWSUIT AND REPRESENTATIVE OR CLASS-WIDE ARBITRATION ARE TO BE DETERMINED SOLELY AND EXCLUSIVELY BY THE FEDERAL DISTRICT COURT LOCATED IN THE SOUTHERN DISTRICT OF FLORIDA OR FLORIDA STATE COURT IN MIAMI-DADE COUNTY AND NOT BY JAMS OR ANY ARBITRATOR. IF A LAWSUIT IS FILED THE PARTIES AGREE THAT THE ARBITRATION SHALL BE IMMEDIATELY STAYED, BY AGREEMENT OR COURT ORDER, UNTIL THE COURT CASE IS RESOLVED AND ALL APPELLATE REVIEW IS EXHAUSTED. THE COST OF PROCEEDINGS UNDER THIS SECTION, INCLUDING, WITHOUT LIMITATION, EACH PARTY'S ATTORNEYS' FEES AND COSTS, SHALL BE BORNE BY THE UNSUCCESSFUL PARTY.

(h) WITHOUT WAIVING THE RIGHT TO APPEAL SUCH DECISION, SHOULD ANY PORTION OF SECTION 15(f) BE STRICKEN FROM THIS AGREEMENT OR DEEMED OTHERWISE INVALID OR UNENFORCEABLE, THEN THIS ENTIRE SECTION 15 (OTHER THAN THIS SENTENCE) SHALL BE STRICKEN FROM THIS AGREEMENT AND INAPPLICABLE, AND ANY AND ALL DISPUTES SHALL PROCEED IN FEDERAL DISTRICT COURT LOCATED IN THE SOUTHERN DISTRICT OF FLORIDA OR FLORIDA STATE COURT IN MIAMI-DADE COUNTY AND BE DECIDED BY A JUDGE, SITTING WITHOUT A JURY, ACCORDING TO APPLICABLE COURT RULES AND PROCEDURES, AND NOT AS A CLASS ACTION LAWSUIT OR ANY OTHER REPRESENTATIVE SUIT.

16.  TIME LIMIT FOR FILING CLAIMS.
As a condition precedent to recovery, all claims under this Agreement must be filed in writing or electronically with JPay within six (6) months of your constructive knowledge that the alleged issue occurred.

Further, any demand for arbitration must be filed no later than one (1) year after your constructive knowledge that the alleged issue occurred.

Where claims are not filed or arbitration is not instituted thereon in accordance with the foregoing provisions, such claims shall be deemed waived and will not be paid.

17. INDEMNIFICATION. To the maximum extent permitted by law, you agree to defend, indemnify and hold harmless JPay, its affiliates and their respective directors, officers, employees and agents from and against any and all third party claims, actions, suits or proceedings, as well as any and all losses, liabilities, damages, costs and expenses (including reasonable attorney's fees) arising out of or accruing from (a) your breach of these Payments Terms of Service, and (b) your use of the Service.

18. DISCLAIMER OF WARRANTIES AND LIMITATION OF LIABILITY. THE JPAY SERVICE IS PROVIDED BY JPAY INC. ON AN "AS IS" AND "AS AVAILABLE" BASIS. JPAY MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE OPERATION OF THE JPAY SERVICE OR THE INFORMATION, CONTENT, MATERIALS, PRODUCTS OR SERVICES INCLUDED ON THIS SITE. YOU EXPRESSLY AGREE THAT YOUR USE OF THE JPAY SERVICE IS AT YOUR SOLE RISK AND THAT YOU ARE SOLELY RESPONSIBLE FOR THE ACCURACY OF THE PERSONAL AND PAYMENT INFORMATION THAT YOU PROVIDE.

TO THE FULL EXTENT PERMISSIBLE BY APPLICABLE LAW, JPAY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. JPAY DOES NOT WARRANT THAT THIS SITE, ITS SERVICES OR E-MAIL SENT FROM JPAY ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. JPAY (AS WELL AS ITS OFFICERS, DIRECTORS, EMPLOYEES, AFFILIATES AND STOCKHOLDERS) WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING FROM THE USE OF THIS SITE, ANY CREDIT CARD COMPANY'S NON-AUTHORIZATION OF A USER'S BANK CARD PAYMENT, ANY GOVERNMENT ENTITY'S NON-ACCEPTANCE OF A PAYMENT FROM A USER USING THE JPAY SERVICE, FOR DISRUPTIONS IN THE JPAY SERVICE, OR FOR ERROR, DELAY OR MIS-DELIVERY OF A PAYMENT, REGARDLESS OF THE CAUSE, INCLUDING (WITHOUT LIMITATION) DIRECT, INDIRECT, INCIDENTAL, PUNITIVE AND CONSEQUENTIAL DAMAGES.

CERTAIN STATE LAWS DO NOT ALLOW LIMITATIONS ON IMPLIED WARRANTIES OR THE EXCLUSION OR LIMITATION OF CERTAIN DAMAGES. IF THESE LAWS APPLY TO YOU, SOME OR

ALL OF THE ABOVE DISCLAIMERS, EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO YOU, AND YOU MIGHT HAVE ADDITIONAL RIGHTS.

19.  SEVERABILITY. If any provision of this Agreement shall be ruled unenforceable, then the remainder shall be enforced to the extent permissible.

20.  ENTIRE AGREEMENT. This Agreement sets forth the entire agreement with respect to the subject matter hereof. This Agreement may not be altered, supplemented, or amended by the use of any other document(s). Notwithstanding the foregoing, the rules and policies of the applicable correctional facility may also govern the Service.